IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 2:17-cr-31-KS-JCG

ALBERT DIAZ, M.D.

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE A DEFENSE ARGUMENT THAT THE JURY SHOULD ACQUIT THE DEFENDANT BECAUSE HE DID NOT RECEIVE MONETARY COMPENSATION FOR WRITING THE FRAUDULENT PRESCRIPTIONS <u>FOR COMPOUNDED MEDICATIONS</u>**

The United States respectfully moves this Honorable Court for an Order precluding the defense from arguing to the jury that it should acquit the Defendant, Albert Diaz, M.D., ("the Defendant") because he did not receive monetary compensation for writing the fraudulent prescriptions for compounded medications at issue in this case. At bottom, this argument is improper because it invites jury nullification and improperly adds an unnecessary element to the charged offenses. Accordingly, the defense should be precluded from arguing that the jury should acquit the Defendant simply because he wrote fraudulent prescriptions without receiving any monetary compensation for doing so.

**BACKGROUND**

**I.      The Underlying Conduct Substantiating the Charges**

*Overview.* These charges arise out of the Defendant's authorizing prescriptions for compounded medications without examining beneficiaries that were filled by Advantage Pharmacy, LLC ("Advantage[1]") in Hattiesburg, Mississippi. The Defendant authorized prescriptions for hundreds of compounded medications (i.e., scar creams, pain creams, and

---

[1] Identified in the Indictment as "Pharmacy 1." See ECF No. 1, at ¶ 13.

1

wellness capsules) without examining the beneficiaries for whom he prescribed these compounded medications to determine medical necessity. Even worse, one of the ingredients for the compounded pain cream included ketamine, which is a Schedule III controlled substance, and the Defendant authorized prescriptions with ketamine as an active ingredient to minors on certain occasions. When the Defendant learned that TRICARE was investigating his conduct, he created false patient records to make it appear that he had examined beneficiaries who received the compounded medications when he had not. Advantage received approximately $2.3 million from TRICARE for the prescriptions for these compounded medications authorized by the Defendant.

*Background of the Scheme at Advantage.* The owners of Advantage developed expensive compounded medications and targeted TRICARE beneficiaries whose insurance covered the compounded medications at issue. Marketers working on behalf of Advantage located physicians who would write the prescriptions for compounded medications. One of those marketers was Gerald Schaar[2] ("Schaar") who approached the Defendant about writing prescriptions for these compounded medications that would be filled and dispensed by Advantage. Schaar approached the Defendant about authorizing prescriptions for compounded medications, and the Defendant agreed to do so.

*The Defendant's Authorizing Prescriptions for Compounded Medications.* Schaar and the Defendant agreed that the Defendant would sign prescriptions for compounded medications that Schaar brought to the Defendant. Specifically, Schaar would provide the Defendant with a check-the-box prescription form that Advantage had created with a beneficiary's name and insurance information already printed on the form. Schaar obtained the beneficiary information from Marketer 2. The Defendant authorized the prescriptions for compounded medications

---

[2] Identified in the Indictment as "Marketer 1." *See* ECF No. 1, at ¶ 15.

without personally examining the beneficiaries to determine whether they had a legitimate medical need for the drugs at issue so that Advantage could fill and dispense the medication and then bill TRICARE for that prescription.  The Defendant also authorized the prescriptions for compounded medications knowing that Schaar would receive a commission from Advantage for them.  Additionally, one of the ingredients that the Defendant authorized in certain pain creams was ketamine, which is a Schedule III controlled substance.  Like the other ingredients, ketamine was chosen solely due to its reimbursement rate.  As noted, the Defendant authorized prescriptions on certain occasions for pain cream that included ketamine to minors, and other TRICARE beneficiaries without examining those beneficiaries to determine any medical need for such a drug.

*The Cover-Up*.  In approximately December 2015, TRICARE, through its pharmacy benefit manager ("PBM"), audited the prescriptions that the Defendant authorized.  The PBM notified the Defendant that it was seeking patient records documenting his visits in connection with prescribing the compounded medications.  The PBM also included an audit response form that asked whether the Defendant personally examined beneficiaries before prescribing them compounded medications.  Because he had not seen any of those beneficiaries, the Defendant did not have the records that the PBM requested.

The Defendant contacted Schaar about the TRICARE audit, and together, they met with Marketer 2, who provided Schaar with the names of the TRICARE beneficiaries for whom the Defendant authorized the compounded medications at issue. The Defendant, Schaar, and Marketer 2 met with certain of those TRICARE beneficiaries and then began a process of fabricating patient records.  They created and backdated (or in some cases, left undated) false patient records.  Specifically, the Defendant indicated on the audit response forms that he had seen the beneficiaries before prescribing them compounded medications and then created falsified patient records with

progress notes detailing visits that never actually occurred. In March 2016, the Defendant produced these false records in response to the TRICARE audit. In May 2016, the Defendant produced these false records after receiving a federal subpoena in connection with a Department of Justice investigation into the same conduct.

## II.     The Charges in the Indictment

On October 18, 2017, the Defendant was charged in a 16-count indictment with one count of conspiracy to commit health care and wire fraud in violation of 18 U.S.C. § 1349, four substantive counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, one count of conspiracy to distribute and dispense a controlled substance in violation of 21 U.S.C. § 846, four substantive counts of intentionally distributing and dispensing a controlled substance in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; one count of conspiracy to falsify and make a false entry in patient files and TRICARE audit response forms in violation of 18 U.S.C. § 371; and five counts of falsifying and making false entries in patient files and TRICARE audit response forms in violation of 18 U.S.C. § 1519.

***Health Care Fraud and Wire Fraud Counts**.* The health care fraud and wire fraud counts (Counts 1 through 5) are premised on the Defendant's involvement in facilitating the submission of falsified claims for compounded medications to TRICARE and then concealing his involvement in the scheme. Namely, these counts are premised on the Defendant's authorizing the preprinted prescription forms created by Advantage and given to him by Schaar for compounded medications without examining beneficiaries to determine medical necessity. Additionally, these charges are premised on the Defendant's knowledge that Schaar would transmit the preprinted prescriptions forms that the Defendant authorized to Advantage, which would then fill and dispense the compounded medications and submit false claims to TRICARE representing that these

beneficiaries had been seen by a physician who determined a legitimate medical need before authorizing the prescription.

Specifically, Counts 2 through 5 detail how TRICARE reimbursed Advantage $11,507.78, for each of four separate prescriptions for scar cream that the Defendant prescribed for TRICARE beneficiaries whom he had never examined. The Defendant knew that Advantage then compensated Schaar a percentage of what it received from TRICARE. These charges are also premised on the Defendant's cover-up of his conduct after he learned of the TRICARE audit and Department of Justice investigation where he made false entries on the audit response forms and created false patient records. As detailed *supra*, the Defendant actively tried to conceal the fact that he never saw these beneficiaries, which he understood was unlawful given that Advantage billed TRICARE for compounded medications based on the Defendant's signature on those prescriptions.

***Drug Distribution and Dispensing Counts***. The drug distribution and dispensing counts (Counts 6 through 10) are premised on the Defendant's authorizing prescriptions for compounded pain creams that included ketamine, which is a Schedule III controlled substance, for beneficiaries whom the Defendant never personally examined to determine medical need. The prescription forms that Schaar provided to the Defendant reflected the different ingredients for pain creams, and specifically noted that ketamine was an active ingredient. When the Defendant signed those prescriptions, he authorized compounded medications with ketamine as an active ingredient to individuals, including minors, whom he had never examined. The Defendant further understood that Advantage would fill and dispense the medications that he authorized in these prescriptions. Specifically, Counts 7 through 10 charge that the Defendant prescribed pain creams to four different individuals that included ketamine as an active ingredient without examining those

individuals to determine a medical need for the drug.

***Obstruction of Justice Counts***.  The obstruction of justice counts (Counts 11 through 16) are premised on the Defendant's cover-up of his illegal conduct.  Specifically, the Defendant, along with Schaar and Marketer 2, met with beneficiaries for whom the Defendant had authorized compounded medications.  The Defendant, with their assistance, made false entries in the audit response forms and created falsified patient records, including progress notes, which made it seem as though the Defendant had examined those beneficiaries before prescribing compounded medications.  Counts 12 through 16 detail that the Defendant made false entries in the audit response forms or falsified patient records by indicating that he had personally examined beneficiaries before prescribing the compounded medications.  The Defendant then submitted those audit response forms with false entries and the falsified patient records to TRICARE and the Department of Justice.

## LEGAL STANDARD

Evidence is relevant when it makes a fact in dispute more or less probable.  Fed. R. Evid. 401; *see also United States v. Leahy*, 82 F.3d 624, 636 (5th Cir. 1996) ("Evidence is relevant if it makes the existence of any fact at issue more or less probable than it would be without the evidence." (internal quotation marks omitted)).  Evidence that is not relevant is not admissible. *See* Fed. R. Evid. 402.  The defense does not have the power to misstate the law and invite the jury to nullify a guilty verdict.  *See United States v. Thompson*, 253 F.3d 700, at *16 (5th Cir. 2001); *accord Sparf v. United States*, 156 U.S. 51, 105 (1895) ("[I]t is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts they find them to be from the evidence."); 5th Cir. Crim. Pattern Jury Ins. 1.01, 1.04.

**ARGUMENT**

The Defendant does not need to have accepted kickbacks to be guilty of the charged offenses. Although doctors in the Defendant's position do – sometimes – receive kickbacks in exchange for writing fraudulent prescriptions,[3] the charges against the Defendant have nothing to do with him soliciting or receiving illegal kickbacks for writing the prescriptions for compounded medications at issue. Rather, the Defendant is charged with a multitude of counts premised on his knowing and willful participation in a scheme to defraud TRICARE by prescribing the compounded medications at issue without examining beneficiaries beforehand; intentionally distributing and dispensing ketamine when authorizing the prescriptions at issue; and then trying to cover-up his illegal conduct by creating fake patient records when he learned of separate government investigations. At base, whether the Defendant personally profited in cash is not an element of any crime charged, and the defense should be precluded from making arguments to the jury that it should acquit the Defendant simply because he did not receive personal monetary gain through his participation in the charged offenses.[4]

**I.     The Fraud Counts Do Not Require That The Defendant Have Financially Profited In Cash To Be Found Guilty.**

The jury can find the Defendant guilty of Counts 1 through 5 (the fraud counts) without finding that he personally received cash for engaging in the scheme to defraud TRICARE. Namely, to prove wire fraud, the government must establish that (1) the defendant knowingly

---

[3] The Federal Anti-Kickback Statute ("AKS") prohibits receiving remuneration of any kind in exchange for referring beneficiaries for goods or services covered by federal health care programs, *see* 42 U.S.C. §1320a-7b(b)(1)(A); *United States v. St. Junius*, 739 F.3d 193, 210 (5th Cir. 2013). However, the Defendant has not been charged with violating the AKS.

[4] Although the government does not intend to present evidence that the Defendant was paid any money for his prescriptions, the government does not concede that the Defendant realized no benefit. Helping a friend and/or business colleague in apparent need can be a great personal benefit, which the Defendant appears to have realized in this case. But regardless of the benefits he did or did not receive, this is not a kickback case. And personal monetary profit is not an element of any of the charged offenses.

participated in a scheme to defraud; (2) interstate wire communications were used to facilitate the scheme; and (3) the defendant intended that some harm result from the fraud.  *See United States v. Mills*, 199 F.3d 184, 188 (5th Cir. 1999).  To be guilty of health care fraud, the government must prove that the defendant knowingly and willfully executed a scheme to defraud a government health care program, such as TRICARE, or used false pretenses to obtain money from a federal health care program.  *See United States v. Njoku*, 737 F.3d 55, 63 (5th Cir. 2013); 18 U.S.C. § 1347.  To prove conspiracy, the government must establish (1) that the defendant and another made an agreement to commit wire fraud and/or health care fraud; (2) the defendant knew the unlawful purpose of the agreement; and (3) that the defendant joined in the agreement willfully, with the intent to further the unlawful purpose.  *See United States v. Simpson*, 741 F.3d 539, 547 (5th Cir. 2014).  Additionally, a conviction for aiding and abetting requires that the defendant's association and participation in the venture was calculated to bring about its success.  *See United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir. 1995).

A scheme to defraud includes false or fraudulent representations intended to deceive another in order to obtain something of value, such as money.  *See United States v. Restivo*, 8 F.3d 274, 280 (5th Cir. 1993).  The government need not prove that the defendant took part in every aspect of the scheme; rather, the intent element is satisfied if the government establishes that the defendant willfully participated in a scheme to defraud intending that the scheme's unlawful objectives be achieved.  *See United States v. Tencer*, 107 F.3d 1120, 1127 (5th Cir. 1997); *see also United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2009) ("[O]nce membership in a scheme to defraud is established, a knowing participant is liable for any wire communication which subsequently takes place or which previously took place in connection with the scheme.").  While proof of gain may be a means to establish intent to defraud, the government may also do so by

introducing evidence that the defendant acted with intent to deceive, whether it was to help a friend, cause financial loss to another, or for any other reason.  *See Restivo*, 8 F.3d at 280 ("A defendant acts with the requisite intent to defraud if he acted knowingly and with the specific intent to deceive, ordinarily for the purpose of causing financial loss to another or bringing about some financial gain to himself.").

Indeed, there is no requirement that the perpetrator of the fraud personally profit.  *See, e.g.*, *United States v. Grant*, 683 F.3d 639, 647 (5th Cir. 2012) ("[T]o prove conspiracy, the government is not required to prove that the accused profited from the conspiracy."); *see also United States v. Welch*, 327 F.3d 1081, 1106 (10th Cir. 2003) ("We likewise reject Defendants' argument that the mail and wire fraud must allege an intent to achieve personal gain.  Such intent, like the intent to harm, is not an element of the mail or wire fraud statute . . . the intent to defraud does not depend upon the intent to gain, but rather, on the intent to deprive." (internal citations omitted)); *United States v. Stockheimer*, 157 F.3d 1082, 1087-88 (7th Cir. 1998) ("An intent to defraud does not turn on personal gain . . . [A]ll that matters is that [defendant] intended to inflict a loss." (internal citation omitted); *United States v. Dowie*, 411 F. App'x 21, 25 (9th Cir. 2010) ("A conviction for wire fraud requires the Government to prove the defendant had a 'specific intent to defraud,' not an intent to personally gain from the fraud."); *United States v. Marzo*, 312 F. App'x 356, 357 (2d Cir. 2008) (holding that personal gain is not an element of wire fraud).  Therefore, if the Defendant received no monetary compensation for authorizing the prescriptions at issue, such a fact does not mitigate his criminal culpability for the federal charges.

Simply put, the Defendant's personal monetary gain is not an element of the fraud charges, so any argument that the government must prove personal monetary gain is improper.[5] *See United States v. Scales*, 599 F.2d 78, 81 (5th Cir. 1979) ("The district court did not err in refusing to permit defense counsel to argue to the jury inapplicable theories of law that were embraced in the refused instructions[.]"); *United States v. Ramcharan*, 83 F. App'x 667, 670 (5th Cir. 2003) (affirming the district court's denial of a proposed defense jury instruction that misstated the law); *United States v. Roberts*, 215 F. App'x 842, 847 (11th Cir. 2007) ("In arguing the law to the jury, counsel is confined to principles that will later be incorporated and charged to the jury. Counsel cannot argue incorrect or inapplicable theories of law. We do not permit defense counsel to make a nullification argument to the jury, recognizing that while a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath." (internal quotations marks, citations, and brackets omitted)); *cf. Musacchio v. United States*, — U.S. —, 136 S. Ct. 709, 715 (2016) ("[W]hen a jury instruction sets forth all the elements of the crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction.").

Indeed, any attempt by the defense to argue that the Defendant did not personally profit in an attempt to invoke jury sympathy and invite jury nullification would be impermissible. *See, e.g., Thompson*, 253 F.3d at *16 ("Jury nullification is not a right belonging to the defendant."); *Jackson v. Johns-Mansville Sales Corp.*, 750 F.2d 1314, 1319 (5th Cir. 2005) (stating that evidence is unfairly prejudicial if it is likely to "inflame the passions of the jury or invoke its sympathies."); *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir. 1985) (commenting on the

---

[5] While the defense is free to argue that the Defendant lacked the requisite criminal intent necessary to commit the crimes at issue, personal monetary gain is not the only motive for fraud, and it would be improper for the defense to argue that the jury could not convict without such evidence.

impropriety of arguments that invoke sympathy to prevent a jury from its "sworn duty to reach a fair, honest, and just verdict according to the facts and evidence presented at trial."); *Gross v. Black & Decker Inc.*, 695 F.2d 858, 863 (5th Cir. 1983) (holding that it is improper to make arguments inviting the jury to "ground a decision on an emotional basis." (internal quotation marks omitted)). Accordingly, the defense should be precluded from arguing that the jury should acquit the Defendant because he did not reap monetary gain from the fraud scheme.

## II.    The Drug Counts Do Not Require That The Defendant Financially Profited To Be Found Guilty.

The jury can find the Defendant guilty of the drug counts (Counts 6 through 10) without finding that the Defendant financially profited from the offense. Namely, to convict a defendant medical professional of a drug distribution charge under § 841(a)(1), the government must prove that the defendant (1) distributed or dispensed a controlled substance; (2) acted knowingly and intentionally; and (3) did so other than for a legitimate medical purpose and in the usual course of his professional practice. *See United States v. Moore*, 423 U.S. 122, 124 (1975); *United States v. Brown*, 553 F.3d 768, 781 (5th Cir. 2008); *United States v. Rosen*, 582 F.2d 1032, 1033 (5th Cir. 1978). In order to convict on the § 846 conspiracy charge, the government must prove (1) an agreement between two or more individuals to violate federal drug laws; (2) the defendant's knowledge of that agreement; and (3) the defendant's voluntary participation in that agreement. *See Brown*, 553 F.3d at 781. There is no requirement that a defendant medical professional charged with violating these statutes monetarily profit or gain from the illegal distribution or dispensing of a controlled substance. Accordingly, because the Defendant's financial profit or gain is not a required element of the applicable sections of the Controlled Substances Act, the defense should be precluded from arguing to the jury that it should acquit him on this basis.

11

**III.     The Obstruction of Justice Counts Do Not Require That The Defendant Financially Profited To Be Found Guilty.**

Likewise, the jury can convict the Defendant of the obstruction counts (Counts 11 through 16) without determining that he financially profited from the offenses. Namely, the substantive obstruction counts require that the government prove that the defendant knowingly falsified or made a false entry in any record, document or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter." 18 U.S.C. § 1519; *United States v. McRae*, 702 F.3d 806, 834-35 (5th Cir. 2012). The conspiracy charge further requires that an agreement between the defendant and another to commit a federal offense and an overt act in furtherance. *See United States v. Yamin*, 868 F.2d 130, 133 (5th Cir. 1988).

Nothing requires the government to establish that the Defendant financially profited when committing these offenses. Accordingly, the Court should preclude the defense from arguing to the jury that it should acquit the Defendant of the obstruction charges because he did not financially profit from the offenses. *See United States v. Berry*, No. 4:06-cr-104, 2007 WL 324027, at *2 (N.D. Miss. Jan. 31, 2007) ("With regard to the Government's motion to exclude any arguments implying jury nullification, it goes without saying that any such statements are improper and would result in a mistrial."); *accord United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("[D]efense counsel may not argue jury nullification during closing argument"); *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.").

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the government respectfully requests that the Court grant its motion *in limine* and preclude the defense from arguing to the jury that it should acquit the Defendant because he did not receive monetary compensation for writing the fraudulent prescriptions for compounded medications at issue in this case.

Dated: January 24, 2018

Respectfully submitted,

D. MICHAEL HURST, JR.
UNITED STATES ATTORNEY

By:   s/ Jared L. Hasten

Mary Helen Wall (MS Bar #100857)
Assistant United States Attorney
501 E. Court Street, Suite 4.430
Jackson, Mississippi 39201-0101
Telephone: (601) 965-4480
Fax: (601) 965-4409
mary.helen.wall@usdoj.gov

Katherine E. Payerle (NC Bar #36897)
Jared L. Hasten (IL Bar #6296695)
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., N.W.
Washington, D.C. 20005
Telephone: (202) 816-9269
katherine.payerle@usdoj.gov
jared.hasten@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Jared L. Hasten, hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties of interest.

On this, the 24th day of January, 2018.

s/ Jared L. Hasten
Jared L. Hasten
Trial Attorney
