**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**UNITED S TATES OF AMERICA**

**V.** **CAUSE NO. 2:17-CR-31-KS-JCG**

**ALBERT DIAZ, M.D.**

**MOTION TO DISMISS INDICTMENT**
**OR ALTERNATIVELY TO SUPPRESS EVIDENCE**

COMES NOW Dr. Albert Diaz, Defendant herein, and asks the Court to dismiss the indictment herein and. in support of the request, states:

1. Government counsel and their agents knew Dr. Diaz had engaged counsel in January 2015 in regard to this matter. In August 2017, present counsel for Dr. Diaz informed government counsel that illegal and improper information was being presented to the grand jury, to wit, the agents had obtained information from and recorded communications with Dr. Diaz as a represented person without consent of Dr. Diaz' counsel, in violation of the rules of professional conduct.

2. Government counsel responded to the objections of defense counsel that the no-contact rule described in the Mississippi Rules of Professional was inapplicable since Dr. Diaz had not been charged with a crime, that the USAO SD MS approved of agents and its attorneys obtaining evidence and information, during an investigation, from a represented person without consent of the person's attorney. Despite the objections of defense counsel, some two months later, government counsel presented an indictment to the grand jury that was based upon the unauthorized evidence and information. An indictment was returned October 18, 2017.

**FACTS**

3. During the entire span of this matter, the investigators and government attorneys knew that Dr. Diaz was represented by competent and capable counsel. On December 18, 2015, Dr. Diaz was notified that he was the subject of a Tricare/DOD audit. He hired counsel who thereafter communicated with government counsel and agents regarding the compound pharmacy claims being investigated. In fact, on January 21, 2016, Dr. Diaz himself directly informed the agents that he had counsel and that his counsel did not want the agents communicating with Dr. Diaz outside the presence of counsel.

4. In late August 2016, government counsel and agents agreed that contact should be made with Dr. Diaz and communications with him recorded. An undercover cooperating witness was recruited to act as an agent of the government in its investigation of Dr. Diaz. Beginning shortly thereafter, in September 2016, without authorization or consent of Dr. Diaz counsel, communications with Dr. Diaz began and were recorded by the cooperating undercover witness.

5. On January 31, 2017, with consent and approval of government counsel, the investigators instructed the cooperating undercover government witness, wearing hidden recording devices and cameras, to communicate with Dr. Diaz about the matters under investigation. Following the instructions of the agents, the cooperating government witness communicated with Dr. Diaz, secretly recorded and filmed their discussion concerning the topics that the investigators and government counsel were investigating.

6. Dr. Diaz counsel neither knew nor consented to the agents contacting Dr. Diaz and certainly would not have consented to recording of discussions with the investigators. This conduct occurred on other occasions during the course of the investigation without knowledge or

consent of Dr. Diaz' counsel. On February 20, 2017, Dr. Diaz had hired additional competent and capable defense counsel.

7. On August 17, 2017, some eight months after the first illegal communication with Dr. Diaz, present defense counsel objected to the conduct of government agents and counsel in communicating with Dr. Diaz during the investigation without notice to his counsel and then using the ill-gotten gains to seek prosecution of Dr. Diaz. However, notwithstanding the objection, the indictment was presented to and returned by the grand jury on October 18, 2017. During the course of the grand jury investigation, government counsel presented to the grand jury the results of the unauthorized communications with and interviews of Dr. Diaz and the fruits of the unauthorized contacts and communication to the grand jury as basis for the indictment. Those unauthorized communications with and interviews of Dr. Diaz and the fruits of the unauthorized contacts and communication will be offered as evidence against Dr. Diaz at trial of the indictment.

8. During the course of the government investigation, including discussions with counsel for Dr. Diaz, the government used the illegal recordings made by the secret undercover government agent to persuade counsel for Dr. Diaz to recommend to Dr. Diaz that he cooperate with the government. This cooperation took the form of a proffer for which the government is now seeking to introduce in its case in chief based on the illegal recordings.

## **ARGUMENT**

9. "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so..", Rule 4.2, Mississippi *Rules of Professional Conduct*, Communication with Person Represented by Counsel.

10. The Comment to *Rule* 4.2 plainly states: "This Rule also covers **any person, whether or not a party** to a formal proceeding, who is represented by counsel concerning the matter in question. " At all times between December 18, 2016 and October 18, 2017, Dr. Diaz was a person as described in the Comment. The exception that government counsel claimed, i.e., the no-contact rule did not apply during the investigation, until Dr. Diaz became a party, directly contradicts the Comment to this rule.

11. The function of the Comment section following each rule pronouncement is described at the outset of the Rules: "The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule." Applying that definition to the words of the rule, since Dr. Diaz was such a person, Rule 4.2 applied during the investigation and government counsel violated the rule. Dr. Diaz hired counsel to advise him as to the very matters that the government was asking him about in the unauthorized contacts, illustrating the "meaning and purpose of the Rule." The position of government counsel effectively deprived Dr. Diaz of his right to counsel from December 2016 through October 2017, the date of indictment, an unacceptable deprivation of due process by government counsel.

12. The local rules of this Court declare that "An attorney who makes an appearance in any case in the district court is bound by the provisions of the *Mississippi Rules of Professional Conduct. . . ."* *L.U.Civ. R.* 83.5. See also *L.U. Crim. R.* 44.1, applying the civil rule of conduct to criminal cases. The rules of professional conduct prohibited government counsel, and their agents, from communicating with Dr. Diaz at any time during and after December 2016 without authorization of counsel for Dr. Diaz. *Rule* 4.2, supra. Government counsel has violated Rule 83.5.

13. Federal prosecutors are bound by the ethics rules of the State in which they practice:

i. By law: "An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." Title 28 USC § 530B(a).

ii. By regulation: "In all criminal investigations and prosecutions, in all civil investigations and litigation (affirmative and defensive), and in all civil law enforcement investigations and proceedings, attorneys for the government shall conform their conduct and activities to the state rules and laws, and federal local court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State . ." 28 C.F.R. § 77.3

iii. By DOJ direction and instruction:

> "Department attorneys should consider the following issues when they analyze the relevant rule of professional conduct regarding communications with represented persons.
> ***
> *B. Whether the contact rule requires that a formal proceeding be pending or whether it applies before the initiation of a formal proceeding.* Most states apply the contact rule to a represented person **whether or not a complaint, indictment, or other charging instrument has been filed.** (Emphasis ours)
> *C. Whether a contact constitutes a communication.* "Communication" involves oral and written contact. It also involves merely listening to a represented person, even when the Department attorney is not asking the represented person any questions.
> ***
> F. Whose consent is necessary to authorize direct contact with a represented person. It is the lawyer's consent, not the client's, that is required to authorize contact with a represented person."

§ 296 Criminal Resource Manual, *United States Attorneys' Manual.*

14. Judicial decision of the Southern District of Mississippi has announced the no-contact rule applies to "any person, whether or not a party" just as the Comment instructs

> "The court has no difficulty concluding that the proscription against attorney communication with a represented person or party of Rule 4.2 has force **even before actual litigation is commenced**. *See Miano v. AC & R Advertising, Inc.*, 148 F.R.D., 68, 77 (S.D.N.Y. 1993); *White v. Illinois Central R.R. Co.*, 162 F.R.D. 118, 119 (S.D. Miss. 1995) (holding that

> pre-suit interview of defendant's foreman by plaintiff's attorney's investigator without permission of the defendant's attorney was a violation of Rule 4.2 and hence improper.)
>
> "Thus, if a lawyer knows that an adverse party is represented by an attorney relating to the subject matter of his representation of a client, **even if he has not yet filed suit, he may not communicate** with that party unless authorized by that party's attorney."

*Stahl vs. Wal-Mart Stores, Inc.,* 47 F.Sup.2d 783, 789 (S.D. Miss. 1998).

15. Government counsel through its agents violated the no-contact rule in interviewing Dr. Diaz without authorization of his counsel. Failure to abide by the rules of professional conduct was a deprivation of due process, particularly when the failure was by deliberate action and design. The federal law recited above, the McDade-Murtha amendment to Title 28 USC § 530B(a), was enacted by Congress in 1998 to address this very issue and combat perceived abuses by federal prosecutors and require them to comply with state no-contact rules. *See e.g. United States v. Brown*, 595 F.3d 498, 516 (3d Cir. Pa. 2010) That statute says that attorneys with the United States Attorney's Office and the Department of Justice ("DOJ") have to conduct themselves just as the remainder of the Mississippi Bar conducts itself when confronted with a person represented by counsel. 28 U.S.C. Section 530B.

16. After McDade made the ethics rules mandatory on federal prosecutors, the ABA working with DOJ made modifications to Model Rule 4.2 (this modified rule was later adopted by Mississippi). The ABA made clear that the Ethical Rule is more restrictive than the Sixth Amendment. This is why the U.S. Attorney's Manual specifically states that Department attorneys should be aware that Comment 5 to Model Rule 4.2 (which is the same as MS) provides "[t]he fact that a communication does not violate a state or federal constitutional right is insufficient to establish that the communication is permissible under this Rule."

17. Dr. Diaz suggests that if the USAO has received special authorization from the Bar Association or the USDC SD MS to ignore the R. 4.2 Comment "**any person, whether or not a party**, the authorization should be produced forthwith, and published in proceedings of the Mississippi Bar, and publicly announced for benefit of potential clients of members of the Bar.

18. The deliberate and intentional violation denied Dr. Diaz his right to due process of law. The indictment should be dismissed. The Supreme Court has announced the rule on a number of occasions. See, e.g., *United States v. Williams,* 504 U.S.36, 46 772-773:

> "Thus, *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988), makes clear that the supervisory power can be used to **dismiss an indictment because of misconduct before the grand jury**, at least where that misconduct amounts to a violation of one of those "few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions, (citation omitted)." (Emphasis ours)

*See* the Fifth Circuit adoption of the above language of the rule in *United States v. Strouse,* 286 F.3d 767, 775 (5th Cir. 2002).

19. Dr. Diaz acknowledges the expressed reluctance of the judiciary to dismiss indictments, recognizing the numerous distinctions to the rule of the *Bank of Nova Scotia* opinion. However, Dr. Diaz submits that the circumstances of this matter, i.e., intentional conduct by government counsel and their agents insidiously invading the province of the sacred relationship between a client and his attorney, calls for application of the rule. Government counsel intentionally ignored the no contact rule announced in Rule 4.2 and, after notice and objection by Dr. Diaz counsel, presented the indictment herein to the grand jury based on the tainted evidence. The indictment presented should be dismissed.

20. Alternatively, the government should be denied the ability to use the violation or any of its fruits in evidence at trial. Government counsel approved their agents communicating with Dr. Diaz without consent of his counsel on a number of occasions. The fruits of those communications were used thereafter in various ways detrimental to the due process rights of Dr. Diaz. Should the Court not grant the request to dismiss this indictment, alternatively Dr. Diaz seeks to suppress all evidence, from the time of the actual unauthorized communications by Dr. Diaz to government agents to all instances thereafter, including the recordations of communications and agent description of information communicated, subsequent discussions and proffers of information by Dr. Diaz solicited by government counsel, and any evidence acquired by the agents as a result of information learned during the unauthorized communications.

21. The suppression remedy has been granted by a district court in the instance of violations of Rule 4.2 by government counsel and agents:

i. ‘The Government's Rule 4.2 violation denied Defendant due process under the Fifth Amendment,” *United States vs. Koerber*, 966 F. Supp. 2d 1207, 1234 (D. Utah 2013),

ii. “Pursuant to the Protection Act, therefore, a prosecutor's failure to comply with the applicable no-contact rule is now also a violation of a federal statute. Moreover, the statute protects citizens' rights against attempts to circumvent them by federal prosecutors or other Government attorneys, thus implicating due process...” *Id.* at 1242;

iii. “Suppressing the two interviews **and all fruit derived therefrom** is necessary here to protect Defendant's due process rights.” “In addition, suppression in this case will help prevent the erosion of “citizens' faith in the evenhanded administration of the laws.” *Id.* Accordingly, the court excludes Defendant's statements from both the first and second interviews **and all fruits derived therefrom.**” *Id.* at 1245 (emphasis added);

*See also United States v. Koerber*, 2013 WL 2407662 (D. Utah 2013).

WHEREFORE, PREMISES CONSIDERED, Defendant Dr. Diaz requests that the Court right the due process violations recited in this motion and dismiss the indictment herein.

IN THE ALTERNATIVE, Defendant Dr. Diaz requests that the Court suppress and preclude the government from offering into evidence during trial of this indictment any unauthorized communications by Dr. Diaz to a government representative and all fruits of those communications, to be disclosed upon hearing of this motion.

This the 1st day of February, 2018.

ALBERT DIAZ, M.D.

BY: */s/ James B. Tucker*
JAMES B. TUCKER (MSB No. 8297)
AMANDA B. BARBOUR (MSB No. 99119)

*HIS ATTORNEYS*

OF COUNSEL:

BUTLER SNOW LLP
Suite 1400
1020 Highland Colony Parkway
Post Office Box 6010
Ridgeland, Mississippi 39158-6010
Phone (601) 948-5711
Fax (601) 985-4500
(E) james.tucker@butlersnow.com
(E) amanda.barbour@butlersnow.com

John M. Colette, MSB #6376
Sherwood A. Colette, MSB#103488
JOHN M. COLETTE & ASSOCIATES
501 South State Street
Jackson, Mississippi 39201
(601)355-6277 Office
(601)355-6283 Facsimile

**CERTIFICATE OF SERVICE**

I, James B. Tucker, one of the attorneys for Albert Diaz, M.D., do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via the means directed by the Court's Electronic Filing System:

D. Michael Hurst
United States Attorney - Southern District
Mary Helen Wall
U.S. ATTORNEY'S OFFICE – Jackson
501 East Court Street
Suite 4.430
Jackson, Mississippi 39201
Phone: (601) 965-4480
Fax: (601) 965-4409
E-mail: michael.hurst@usdoj.gov
E-mail: mary.helen.wall@usdoj.gov

Katherine E. Payerle (NC Bar #36897)
Jared L. Hasten (IL Bar #6296695)
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., N.W.
Washington, D.C. 20005
Telephone: (202) 816-9269
katherine.payerle@usdoj.gov
jared.hasten@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

This the 1st day February, 2018.

*/s/James B. Tucker*
JAMES B. TUCKER

40342533.v1