IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.                                                            CRIMINAL NO. 2:17-cr-31-KS-JCG

ALBERT DIAZ, M.D.

**UNITED STATES' RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS INDICTMENT OR ALTERNATIVELY TO SUPPRESS EVIDENCE**

The Motion to Dismiss the Indictment or Alternatively to Suppress Evidence should be denied because the government's covert, pre-indictment recordings of the Defendant were authorized by law under Mississippi Rule of Professional Conduct 4.2, and did not infringe on any of the Defendant's constitutional rights. Courts from across the country have recognized the importance in allowing government investigations to proceed in this manner. The Defendant's Motion fails to acknowledge controlling Fifth Circuit precedent on this issue (which had been provided to counsel for the Defendant before the filing of the Motion). Indeed, the Defendant's own authority cited in the Motion omits key holdings that doom his requested relief. Given that the government's undercover recordings with the Defendant were authorized by law, the Motion should be denied.

**BACKGROUND[1]**

Over the course of 2014 and 2015, the Defendant wrote numerous prescriptions for compounded medications for beneficiaries whom he had never examined to determine medical

---

[1] The government incorporates by reference herein the Background Sections in its Memorandum in Support of Its Motion *in Limine* for An Order Permitting the United States to Offer As Evidence In Its Case-In-Chief Statements Made by the Defendant during Proffer Protected Interviews (CM/ECF No. 30) and its Memorandum In Support of Its Motion *in Limine* to Exclude A Defense Argument that the Jury Should Acquit The Defendant Because He Did Not Receive Monetary Compensation for Writing the Fraudulent Prescriptions for Compounded Medications (CM/ECF No. 28). These sections provide a more complete summary of the Defendant's involvement in the charged scheme, his repeated attempts to cover-up his illegal conduct, and his lies to the government about the cover-up of his offense.

necessity that were ultimately reimbursed by TRICARE.  Gerald "Jay" Schaar provided the Defendant with preprinted prescription forms that had been created by Advantage Pharmacy ("Advantage") with beneficiary information that Schaar obtained from Marketer 1.  The majority of the prescriptions for compounded medications that the Defendant authorized were for TRICARE beneficiaries.  The Defendant also authorized compounded pain creams that included ketamine as an active ingredient to beneficiaries whom he never examined, including minors.  In December 2015, TRICARE notified the Defendant that he was being audited.  Over the next month, in January 2016, the Defendant, Schaar, and Marketer 1 arranged for the Defendant to meet with the beneficiaries for whom he prescribed the compounded medications at issue so that the Defendant could create false patient records to deceive TRICARE.

On January 21, 2016, government agents from the Mississippi State Board of Medical Licensure, Investigative Division, first met with the Defendant.  During the course of that interview, the Defendant admitted that he wrote prescriptions for compounded medications that included the controlled substance, ketamine.  In the middle of that interview, the Defendant told agents that his then-attorney advised the Defendant to discontinue that interview.  The Defendant advised the agents that he was ending the interview based on the advice of that attorney.  The agents complied with the Defendant's request and served him with a subpoena for records related to his prescriptions for compounded medications filled at Advantage.  In March 2016, the Defendant responded to the TRICARE audit and provided the falsified patient records that he created after visiting the beneficiaries whom he had not seen before prescribing the medications at issue.  In May 2016, the Defendant provided these same records to the government in response to the subpoena.  The government's investigation into the Defendant continued after he produced these falsified patient records.

On September 16, 2016, Schaar (who was cooperating with the government at that time) recorded a conversation with the Defendant about his involvement in authorizing the prescriptions for compounded medications without personally examining the beneficiaries and the Defendant's cover-up of this crime.  On January 31, 2017, after receiving a telephone call from the Defendant stating that he wanted to meet, Schaar (who was still cooperating with the government) recorded another conversation with the Defendant (the "Video-recording").  In that conversation, the Defendant discussed an upcoming meeting with the government and how he planned to feign ignorance over Marketer 1 in an attempt to distance himself from the wrongdoing at Advantage.  The Defendant also admitted that authorizing the prescriptions at issue for compounded medications without personally examining the beneficiaries to determine medical necessity was illegal.

Between February and May of 2017, the government met with the Defendant and his counsel on a number of occasions, in which he followed through with his plan to feign ignorance of Marker 1, as he planned in the Video-recording.  On March 26, 2017, the government shared the Video-recording with his counsel.  On May 16, 2017, the government presented the Defendant with an overview of its case against him (i.e., a reverse proffer), which included his statements the Video-recording.  The Defendant agreed to cooperate at that point, and met with the government again on May 26, 2017.[2]

Several months later, the Defendant obtained new counsel (Counsel 3) who made arguments contradicting the statements that the Defendant had previously provided to the government in the proffer protected interviews.  Counsel 3 also directed the government to an out-

---

[2] A more complete version of these meetings is provided in the government's Memorandum in Support of Its Motion *in Limine* for An Order Permitting the United States to Offer As Evidence In Its Case-In-Chief Statements Made by the Defendant during Proffer Protected Interviews (CM/ECF No. 30).

of-circuit district court case, *United States v. Koerber*, No. 2:09-cr-00302 (D. Utah), which is discussed *infra*, for the proposition that the government would not be able to rely on the undercover recordings at trial. The government advised Counsel 3 that his reading of this case was unavailing, and as discussed *infra*, the case belies the relief that the Defendant requests in his Motion.

On October 16, 2017, the grand jury returned a 16-count indictment charging the Defendant with federal crimes out of his wrongful authorizations of compounded medications for beneficiaries whom he never examined, his authorizing of ketamine in pain creams to certain beneficiaries without ever personally examining those beneficiaries, and his attempt to cover-up his illegal conduct. As will be demonstrated at trial, in addition to the undercover recordings, the evidence will comprise of the fraudulent prescriptions and witness testimony about the Defendant's unlawful conduct.

## LEGAL STANDARD

A due process violation giving rise to dismissal of an indictment will be found only in the most extreme and rare circumstances. *See United States v. Mauskar*, 557 F.3d 219, 231-32 (5th Cir. 2009); *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997); *United States v. Yater*, 756 F.2d 1058, 1066 (5th Cir. 1985). Because meeting that standard is extremely demanding, *Asibor*, 109 F.3d at 1039, courts have rejected such arguments with regularity. *United States v. Sandlin*, 589 F.3d 749, 758-59 (5th Cir. 2009). Similarly, the suppression of evidence premised on federal or state law violations triggers the exclusionary rule in only the most extreme of circumstances that infringe upon constitutional rights of the accused. *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 348-49 (2006); *United States v. Caceres*, 440 U.S. 741, 751-55 (1979).

Further, the Fifth Circuit has explicitly held that the "no-contact" rule embodied in Mississippi Rule of Professional Conduct 4.2 (which is modeled after the American Bar

Association's Model Rule of Professional Conduct 4.2), in addition to the Sixth Amendment, is not violated by the government's covert contacts with an individual pre-indictment who is known to be represented. *See United States v. Johnson*, 68 F.3d 899, 902 (5th Cir. 1995) (holding that "disciplinary rules [the Texas State Bar Rule and the ABA Model Rule] do not apply to government conduct prior to indictment"); *United States v. Heinz*, 983 F.2d 609, 612-13 (5th Cir. 1993) (noting that "the great weight of authority" holds that DR 7-104(A)(1) (discussed *infra*) "does not apply during the investigative process before the initiation of criminal proceedings." (internal quotation marks omitted)). Other circuit courts of appeals agree. *See United States v. DeVillio*, 983 F.2d 1185, 1192 (2d Cir. 1993); *United States v. Balter*, 91 F.3d 427, 436 (3d Cir. 1996); *United States v. Worthington*, 1990 WL 116618, at *3-4 (4th Cir. 1990); *United States v. Cope*, 312 F.3d 757, 772 (6th Cir. 2002); *United States v. Plumley*, 207 F.3d 1086, 1094-95 (8th Cir. 2000); *United States v. Powe*, 9 F.3d 68, 69 (9th Cir. 1993); *United States v. Ryans*, 903 F.2d 731, 740 (10th Cir. 1990); *United States v. Sutton*, 801 F.2d 1346, 1365-66 (D.C. Cir. 1986).

**ARGUMENT**

Schaar's pre-indictment undercover recordings of the Defendant did not violate Mississippi Rule of Professional Conduct 4.2 as such conduct was authorized by a multitude of preexisting case law that permits pre-indictment non-custodial[3] *covert* contact. Nor did it impinge on any of the Defendant's constitutional rights as case law from across the country permits the government to make this type of undercover contact with a represented individual prior to an indictment being returned. The Motion argues that the government violated Mississippi Rule of Professional Conduct 4.2 and the Fifth and Sixth Amendments (Mot., at 4 ¶ 11, 6 ¶ 15); however, the Motion

---

[3] The Defendant does not argue that he was in custody when Schaar made the recordings. Nor could he, as the recordings took place at the Defendant's office. *See Illinois v. Perkins*, 496 U.S. 292, 296-97 (1990); *Hoffa v. United States*, 385 U.S. 293, 304 (1966).

5

fails to (1) discuss, or even identify, binding and overwhelming contrary authority that belies its argument; and (2) acknowledge that its own authority undercuts the requested relief. Given that no federal or state law was violated, nor was any constitutional right infringed, the Defendant's Motion should be denied.

**I.    The Fifth Circuit And Courts Across The Country Have Held That Pre-Indictment Covert Contact With A Represented Individual Is "Authorized By Law."**

Mississippi Rule of Professional Conduct 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer *or is authorized by law to do so.*" Miss. R. Prof. Cond. 4.2(a) (emphasis added). ABA Model Rule of Professional Conduct 4.2 and Mississippi Rules of Professional Conduct 4.2 are almost identical. And, the comment to Mississippi Rule of Professional Conduct 4.2 provides that the rule is "substantially identical to DR 7-104(A)(1)," which was the predecessor to and is nearly identical to the ABA's current Model Rule, and importantly, DR 7-104(A)(1) contained the same "authorized by law" exception when communicating with represented individuals. *See Heinz*, 983 F.2d at 613 (collecting cases and recognizing that DR 7-104(A)(1), the forerunner to ABA Model Rule of Professional Conduct 4.2, does not apply at the pre-indictment stage). Thus, the Fifth Circuit's interpretation of DR 7-104(A)(1)'s "authorized by law" exception remains instructive authority when interpreting Mississippi Rule of Professional Conduct 4.2. *See United States v. Starnes*, 157 F. App'x 687, 693-94 (5th Cir. 2005) (noting that the Mississippi Rules of Professional Conduct "are identical to the American Bar Association's Model Rules of Professional Conduct in all relevant aspects."); *accord United States v. Brown*, 595 F.3d 498, 514-

16 (3d Cir. 2010) (relying on federal cases to interpret the authorized by law exception to the Pennsylvania no-contact rule).[4]

In *Heinz*, the court held that pre-indictment monitoring by government agents of a telephone conversation between the defendant and a cooperating witness did not violate the defendant's right to counsel under the Sixth Amendment. *See Heinz*, 983 F.2d at 613-14. In holding that the district court erred in suppressing the recordings, the court recognized the overwhelming authority holding that DR 7-104(A)(1) did not apply "during the investigative process before the initiation of criminal proceedings." *Id*. at 614 (internal quotation marks omitted). The court stated that such a rule barring pre-indictment covert contacts would be imprudent because of "the devastating effect that such a rule would have on undercover operations." *Id*. at 614. The court also observed that the "beneficiaries of [a rule barring pre-indictment covert contacts with represented parties] would be the big time criminals with lawyers at their elbows." *Id*. Similarly, in *Johnson*, the court affirmed the rejection of the defendant's argument that the indictment should have been dismissed based on pre-indictment covert contacts between a cooperator and the defendant. *Johnson*, 68 F.3d at 902.

The Fifth Circuit's reasoning is in line with other circuit courts of appeals from across the country. *Cope*, 312 F.3d at 772 (holding that "the government's working with confidential

---

[4] In 1995, the ABA amended Rule 4.2 changing the reference of "party" to "person." The comment to Mississippi Rule of Professional Conduct contains the same construction: "This Rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question." Miss. R. Prof. Cond. 4.2, cmt. When amending Rule 4.2 in 1995, the ABA was clear that the addition of the term "person" did not preclude the government from making pre-indictment covert contact with a represented individual. *See* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. at 95-396, at 11 (1995); *United States v. Elliott*, 684 F. App'x 685, 693 (10th Cir. 2017). Notably, comment 5 to the current version of ABA Model Rule of Professional Conduct recognizes that undercover, pre-indictment contacts are authorized by law as an exception to the no-contact rule: "communications authorized by law may also include investigative activities of lawyers representing governmental entities, directly or through investigative agents, prior to commencement or criminal or civil enforcement proceedings." ABA Model R. Prof. Cond. 4.2, cmt. 5.

informants to elicit incriminating information from [an unindicted] represented defendant" did not violate DR 7-104 because the contact was "authorized by law"); *Sutton*, 801 F.2d at 1366 (noting that the disciplinary rule "was never meant to apply" where the government taped conversations with a represented target who had not yet been indicted); *Ryans*, 903 F.2d at 739-41 (holding that the disciplinary rule "was not intended to preclude undercover investigations of unindicted suspects merely because they have retained counsel"); *United States v. Hayes*, 231 F.3d 663, 673 (9th Cir. 2000) (en banc) (finding no Sixth Amendment violation, even though the defendant was known to be represented, because the defendant had not been indicted, and noting that at the time of the taping, "the government remained an investigator rather than a prosecutor and [the defendant] was a target, not 'the accused'"); *Balter*, 91 F.3d at 436 (holding that applying this rule to law enforcement personnel during the investigative stages of a matter "would significantly hamper legitimate law enforcement operations by making it very difficult to investigate certain individuals."); *United States v. Vasquez*, 675 F.2d 16, 17 (2d Cir. 1982) (noting that permitting persons to insulate themselves from certain investigative tools by keeping a lawyer on retainer "would simply enable criminal suspects, by retaining counsel, to hamper the government's conduct of legitimate investigations.").  The Defendant's failure to acknowledge any of this authority is telling: all of these cases foreclose the Defendant's arguments in the Motion.  Accordingly, in light of the foregoing authority, the Motion should be denied as there was no violation of Mississippi Rule of Professional Conduct 4.2, the Fifth Amendment, or the Sixth Amendment.

## II.     The Motion's Authority Belies Its Argument.

The Defendant's Motion argues that the government impermissibly recorded the Defendant because the "no-contact rule" embodied in Mississippi Rule of Professional Conduct 4.2 applies to *all* contact regardless of whether the contact occurs during a pre-indictment investigatory stage.

(Mot., at 4-5 ¶¶ 13-14).  The Defendant further relies on a civil case for the unremarkable proposition that, in civil cases, a lawyer may not communicate pre-suit with a person represented by counsel relating to the subject matter of the dispute.  (*Id*. at 5 ¶ 14).  At base, the Defendant contends that the government is prohibited from ever making *any* contact with a target who it knows to be represented by counsel, even if such contact occurs between an undercover informant and the defendant before criminal proceedings are instituted.  (*See id*.).  This argument, however, is neither supported by the case law discussed *supra* nor by the authority cited in the Motion.  The Defendant ignores the portions of his own authority that permit *covert* pre-indictment contacts between a cooperator and a represented target.

*First*, the Defendant cites certain portions of Section 296 of the Criminal Resource Manual that is part of the United States Attorneys' Manual.  (Mot., at 4-5 ¶ 13).  The Defendant omitted subsection (G) of Section 296, which undercuts his argument:

> G. What constitutes contact that is "authorized by law."  For purposes of the rule on contacts with represented persons, the term "law" may include: 1) a specific statute; 2) a court order; or 3) *case law*.  Several jurisdictions have established by case law a law enforcement investigatory exception to the contact rule in limited circumstances.  Department attorneys should be aware under what circumstances such contacts are recognized as 'authorized by law' in the particular jurisdiction in which they propose contact with a represented person.  ***Generally, the case law recognizes covert contacts in non-custodial and pre-indictment situations as 'authorized by law.'***  See United States v. Balter, 91 F.3d 427 (3d Cir.), *cert denied,* 519 U.S. 1011 (1996); *United States v. Powe*, 9 F.3d 68 (9th Cir. 1993); ***United States v. Heinz*, 983 F.2d 609 (5th Cir. 1993)**; *United States v. Ryans*, 903 F.2d 731 (10th Cir.), *cert. denied*, 498 U.S. 855 (1990); *United States v. Schwimmer*, 882 F.2d 22 (2d Cir. 1989), *cert. denied*, 493 U.S. 1071 (1990); *United States v. Sutton*, 801 F.2d 1346 (D.C. Cir. 1986); *United States v. Fitterer*, 710 F.2d 1328 (8th Cir), *cert. denied*, 464 U.S. 852 (1983); *United States v. Jamil*, 707 F.2d 638 (2d Cir. 1983); *United States v. Kenny*, 645 F.2d 1323 (9th Cir.), *cert. denied*, 452 U.S. 920 (1981); *United States v. Lemonakis*, 485 F.2d 941 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 989 (1974).  A few courts have recognized such an exception in connection with overt, pre-indictment contacts during a criminal investigation.  *See United States v. Dobbs*, 711 F.2d 84 (8th Cir. 1983); *United States v. Joseph Binder Schweitzer Emplem. Co.*, 167 F. Supp. 2d 862 (E.D. N.C. 2001).

§ 296 Criminal Resource Manual, *United States Attorneys' Manual* (emphasis added). In sum, this subsection ignored by the Defendant specifically provides that pre-indictment *covert* contacts between a cooperator and a represented target is a permissible exception to the "no-contact rule" borne out by the case law.

*Second*, the Defendant's reliance on *United States v. Koerber* is similarly misplaced, as the government explained to defense counsel in a letter on September 6, 2017. (Mot., at 8 ¶ 21). In *Koerber*, the court suppressed evidence ruling that the government's violation of Utah's version of the no-contact rule infringed the defendant's due process rights. *Koerber*, 966 F. Supp. 2d 1207, 1245 (D. Utah 2013). The government conducted two *ex parte* overt interviews (i.e., agent interviews of the target) of an un-indicted target who was represented by counsel, and who advised the agents conducting the interviews of this fact. *Id*. at 1214, 1218, 1227-34. Indeed, the court even noted that, prior to these interviews, the government attempted to have the defendant testify as a custodian of certain records before the grand jury, only to be rebuffed by the defendant's attorney. *Id*. 1216, 1232. The court further recognized that the government initiated *overt* communications with the defendant rather than pursing the investigation through the use of an undercover informant (which would have been appropriate). *Id*. at 1229. The court ultimately ruled that Utah's Rule of Professional Conduct 4.2(a) prohibited the *overt ex parte* communications at issue in the case during the pre-indictment investigatory stage. *Id*. at 1234. In reaching this conclusion, however, the court stressed that its ruling did nothing to change the long-standing rule allowing *covert* pre-indictment non-custodial contacts with a represented target:

- "[T]he court finds that this [authorized by law] exception still has the teeth provided to it by the specific holding in *Ryans* (and *Mullins*); that is, that *covert* or *undercover* noncustodial, pre-indictment *ex parte* contact by law enforcement personnel in the investigative phase of a matter is 'authorized by law' for purpose of the no-contact rule. That has become a 'well-established investigatory

technique' that is authorized by law on the weight of *Ryans* and extensive progeny in many jurisdictions." *Id*. at 1232.

- "This court's ruling does not in any way upset the legitimate investigative techniques—including the use of informants to gather evidence against a suspect—that prosecutors are expressly authorized by law to employ in conducting and supervising criminal investigations . . . This court's ruling . . . does nothing to upset the legitimate investigative techniques such as the pre-indictment use of undercover informants." *Id*. at 1233 (internal quotation marks and citations omitted).

- "[T]he pre-indictment use of informants or undercover techniques remains, as ever, authorized by law in connection with targets of investigations." *Id*. at 1233 n. 13.

Significantly, nowhere in the Defendant's Motion is there any mention of these rulings.

*Last*, the Defendant requests extraordinary relief—the dismissal of the indictment, or alternatively suppression of the recordings and any evidence gathered as a result (Mot., at 7-8 ¶¶ 18-20)—that is squarely foreclosed by existing Fifth Circuit precedent. *See Johnson*, 68 F.2d at 902 (rejecting the defendant's argument that pre-indictment contact between a cooperator and a represented target warranted dismissal of the indictment); *Heinz*, 983 F.2d at 615 (reversing the district's court suppression of evidence based on pre-indictment contacts between a cooperator with a represented target).

The Defendant's Motion ignored all authority that authorizes by law the legitimate investigatory technique of making use of undercover informants to record conversations with targets of a criminal investigation, even those who are represented. As the government's recordings of the Defendant were an appropriate law enforcement investigatory technique, the Defendant's Motion seeking dismissal of the indictment, or alternatively, seeking suppression of evidence, should be denied.

## CONCLUSION

WHEREFORE, for the reasons stated herein, the government respectfully requests that the Court deny the Defendant's Motion to Dismiss Indictment Or Alternatively To Suppress Evidence.

Dated: February 6, 2018            Respectfully submitted,

                                             D. MICHAEL HURST, JR.
                                             UNITED STATES ATTORNEY

                           By:     s/ Jared L. Hasten

                                             Mary Helen Wall (MS Bar #100857)
                                             Assistant United States Attorney
                                             501 E. Court Street, Suite 4.430
                                             Jackson, Mississippi 39201-0101
                                             Telephone: (601) 965-4480
                                             Fax: (601) 965-4409
                                             mary.helen.wall@usdoj.gov

                                             Katherine E. Payerle (NC Bar #36897)
                                             Jared L. Hasten (IL Bar #6296695)
                                             Trial Attorneys
                                             U.S. Department of Justice
                                             Criminal Division, Fraud Section
                                             1400 New York Ave., N.W.
                                             Washington, D.C. 20005
                                             Telephone: (202) 816-9269
                                             katherine.payerle@usdoj.gov
                                             jared.hasten@usdoj.gov

**CERTIFICATE OF SERVICE**

    I, Jared L. Hasten, hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties of interest.

    On this, the 6th day of February, 2018.

                                                s/ Jared L. Hasten
                                               Jared L. Hasten
                                               Trial Attorney