IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**

**V.**                                                                                           **CAUSE NO.: 2:17-CR-31**

**ALBERT DIAZ**

## MOTION FOR BAIL PENDING SENTENCING

COMES NOW your Defendant, Albert Diaz, by and through undersigned counsel, and files this, his Motion for Bail Pending Sentencing, and in support would respectfully show unto this Honorable Court the following:

I.

On March 2, 2018, Dr. Diaz was found guilty by a jury of his peers. Sentencing has been set for May 22, 2018. Pursuant to 18 USC §3143(a)(2), a person convicted of an offense described in 18 USC §3142(f)(1)(C) – which includes the controlled substances offenses charged in the indictment – shall be detained unless "there is a substantial likelihood that a motion for . . . new trial will be granted" and the Court "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to others or the community."

II.

Your defendant submits there *is* a substantial question of fact and law that is likely to result in a new trial. Your defendant will likely receive a new trial based on the fact that a juror contaminated and tainted the other jurors by telling them that she feared for her safety because of threats of harm from the defendant's family. When initially questioned, the juror misled the Court and said that she had not mentioned this perceived threat to any of the other jurors, but further voir dire revealed that she had in fact told other jurors that the defendant's family had threatened her

and she feared for her safety to the point of being physically upset and crying.[1] Ultimately, only one juror was dismissed.

### III.

The court questioned each remaining juror individually. While each juror responded that they could be fair and impartial, undersigned submits that their actions speak louder than words and the interests of justice will require that a new trial be granted. First, the jurors were told of this alleged threat on Tuesday (February 27, 2018) and again on Wednesday (February 28, 2018), then once again on Thursday (March 1, 2018) morning. Despite the Court's instructions to the jury, no juror mentioned this alleged threat to any court personnel.[2] The allegation that the defendant's family threatened the life and safety of a juror did not come to light until the morning of closing arguments, and it only came to light because other jurors waited in the parking lot for the upset juror in order to walk her in the building for her safety. The actions of these jurors in keeping the alleged threats quiet for several days and escorting their colleague into the building to keep her safe is clear evidence of extrinsic evidence, highly prejudicial against the defendant, that was injected into the jury's deliberations.

### IV.

None of the jurors informed the judge although they stated they kept telling the concerned juror to inform the Court. After a lengthy lunch discussion on Thursday, at least four (4) jurors decided to meet the affected juror in the parking lot on the following morning Friday (March 2, 2018), the day of deliberations, to protect her and walk her into the Courthouse for her safety!

---

[1] Your defendant does not have the benefit of the transcript at the time of filing this, and reserves the right to correct and amend any factual errors herein resulting from an inaccurate recollection.
[2] Obviously, since the jurors did not follow this instruction, how can we rely on the general proposition that they followed the other instructions on reaching this verdict.

Actions speak louder than words, and the fact that a substantial portion of the jury felt the need to protect one of their colleagues from the defendant's family speaks to a bias that cannot reasonably be denied. Furthermore, several jurors stated the first statement this juror made when she arrived Friday morning was to the effect of, "well I didn't get car-bombed last night!" The bias that infected the jury's deliberations could not be any clearer.

"In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial . . . ." *Remmer v. United States*, 347 U.S. 227, 228-29 (1954). In *Remmer*, a single juror was tainted by an attempted bribe. The juror promptly reported the attempted bribe to the judge, and an investigation was launched. The defendant learned of this incident after the verdict and moved for a new trial, a decision that was affirmed on appeal. The Supreme Court reversed. Juror bias constitutes grounds for reversal. *Id.*; *see also Smith v. Phillips*, 455 U.S. 209 (1982).

In the instant case, there is simply no plausible claim of impartiality for a jury that has heard that the defendant's family has threatened one of its members, that did not report these threats for days in contravention of the Court's explicit instructions, and that banded together to provide physical security against the defendant's family. No degree of inquiry by the Court could un-ring that bell. Unlike *Remmer*, the present case involves a contagion that affected numerous jurors and led some of those jurors to take action in purported opposition to the defendant's family. Actual prejudice is proved by the coterie of jurors in the parking lot, assembled to protect one of their own from the defendant's supporters. Such a posture is inherently oppositional to the defendant's side of the case.

No jury could possibly be impartial in light of comments that the defendant or his family was considering murdering one of their number. It is beyond difficult to maintain an unprejudiced view of the evidence while at the same time joining a security retinue against a potential assault on a fellow juror by the defendant's family. A new trial is necessary to preserve Dr. Diaz's constitutional right to an impartial jury. These exceptional circumstances clearly establish the need for a new trial, and thus the first prong of 18 U.S.C. § 3143(a)(2)'s requirements for release pending sentencing has been established. *See also* 18 U.S.C. § 3145(c) ("A person subject to detention pursuant to § 3143(a)(2) . . ., and who meets the conditions of release set forth in § 3143(a)(1) [i.e., does not pose a flight risk or danger to the community], may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.").

## VI.

There is clear and convincing evidence Dr. Diaz is not likely to flee and does not pose a danger to the community because the risk of flight can be rebutted by clear and convincing evidence by requesting electronic monitoring be ordered and a pledge of assets by the defendant. *U.S. v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). Your defendant is a first offender with no criminal record. *U.S. v. Carbone*, 793 F.2d 559 (3rd Cir. 1986). Your defendant has been on bond since November 1, 2017, and has been totally compliant with all conditions of bail. *U.S. v. Hare*, 873 F.2d 796 (5th Cir. 1989). Your defendant will call numerous character witnesses who are leaders in the community and will agree to be third-party custodians if released. *U.S. v. Abad*, 350 F.3d 793 (8th Cir. 2003). Your defendant has already surrendered his passport. He is nearly eighty years old and has neither the ability nor inclination to flee. Further, apart from the implausible but

highly prejudicial allegations of one of the jurors, there is no evidence that Dr. Diaz poses any threat to the community.

In addition, the extreme hardship imminent upon your defendant's employees and patients constitutes an exceptional reason why detention would not be appropriate. *See* 18 U.S.C. § 3145(c). The few brief months between now and your defendant's sentencing may seem relatively insignificant to the Court, but that time will allow your defendant to provide care to expectant mothers close to term, to transition his other patients and their records in an orderly and reassuring fashion, and to unwind his practice and help his employees find new work.

**WHEREFORE, PREMISES CONSIDERED**, your defendant respectfully requests that this motion for bail pending sentencing be received and considered by this Honorable Court and after same and order entered granting bail pending sentencing.

This the 5th day of March, 2018.

Respectfully Submitted,

/s/ John M. Colette,
Attorney for Defendant

OF COUNSEL:

JOHN M. COLETTE, MSB #6376
SHERWOOD A. COLETTE, MSB#103488
John M. Colette & Associates
501 South State Street
Jackson, Mississippi 39201


JAMES B. TUCKER, MSB NO. 8297
AMANDA B. BARBOUR, MSB NO. 99119
BUTLER SNOW LLP
Suite 1400
1020 Highland Colony Parkway
Post Office Box 6010
Ridgeland, Mississippi 39158-6010

## CERTIFICATE OF SERVICE

I, John M. Colette, one of the attorneys for Albert Diaz, M.D., do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via the means directed by the Court's Electronic Filing System:

D. Michael Hurst
Mary Helen Wall
United States Attorney
U.S. ATTORNEY'S OFFICE - Jackson
501 East Court Street
Suite 4.430
Jackson, Mississippi 39201

Katherine E. Payerle (NC Bar #36897)
Jared L. Hatsen (IL Bar #6396695)
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Ave, N.W.
Washington, D.C. 20005

Amanda S. Wick (D.C. Bar No. 501043)
Money Laundering and Asset Recover Section (MLARS)
Criminal Division
U.S. Department of Justice
1400 New York Ave.
Washington, D.C. 20530

ATTORNEYS FOR THE UNITED STATES

Respectfully Submitted,
/s/ **John M. Colette,**
Attorney for Defendant

41013646.v1