IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 2:17-cr-31-KS-JCG

ALBERT DIAZ, M.D.

**UNITED STATES' RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION FOR BAIL PENDING SENTENCING**

The Defendant's Motion for Bail Pending Sentencing ("Motion" or "Mot.") should be denied because there is not a substantial likelihood that a motion for a new trial will be granted and there is not clear and convincing evidence that the Defendant is not a flight risk or a danger to the community. Because the Defendant has not met his burden under 18 U.S.C. § 3143(a)(2), his Motion should be denied.

**BACKGROUND**

On March 2, 2018, after a five-day trial in which the Defendant testified and the jury deliberated for close to six hours, the jury returned guilty verdicts against the Defendant on all sixteen counts in the indictment, which included one dual object conspiracy to commit health care fraud and wire fraud under 18 U.S.C. § 1349; four substantive counts of wire fraud under 18 U.S.C. §§ 1343 and 2; one count of conspiracy to distribute and dispense a controlled substance (Ketamine) in violation of 21 U.S.C. §§ 846 and 841(a)(1); four substantive counts of distributing and dispensing a controlled substance (Ketamine) in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; one count of conspiracy to falsify records in a federal investigation in violation of 18 U.S.C. § 371; and five substantive counts of falsification of records in a federal investigation in violation of 18 U.S.C. §§ 1519 and 2.

**LEGAL STANDARD**

Section 3143(a)(2) provides that "[t]he judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 [which encompasses the offenses in 21 U.S.C. §§ 846 and 841(a)(1)] and is awaiting imposition or execution of sentence shall be detained unless the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; and the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2)(A)(i), (B); *see also United States v. Olis*, 450 F.3d 583, 585 (5th Cir. 2006) ("A convicted defendant has no constitutional right to bail."); *United States v. Dailey*, 650 F. App'x 193, 194 (5th Cir. 2016) ("§ 3143 establishes a presumption against the granting of bail after a conviction.").

**ARGUMENT**

The Defendant's Motion should be denied because his argument about purported jury prejudice that would warrant a new trial fails and the Defendant has not established by clear and convincing evidence that he is not a flight risk and that he is not a threat to the community. There is a presumption that the Defendant be detained in light of his convictions, and nothing in the Defendant's Motion rebuts that presumption.

**I.    The Defendant's Argument About The Purported Tainted Jury Is Unavailing.**

The Defendant misguidedly argues that his Motion should be granted because there are substantial questions of fact and law that warrant a new trial. (Mot., at 2). The record is clear, however, that there was no jury taint and that all of the jurors stated under oath that they were impartial and could follow the Court's instructions and consider the Defendant's guilt based only on the evidence adduced at trial. There are no new facts or controlling authority that warrant

revisiting Judge Starrett's previous determination that the jury was fair and impartial when denying the Defendant's motion for a mistrial on this very issue.

On the morning of March 2, 2018, one of the jurors (hereinafter referred to as "the excused juror") expressed concerns to the Court about her feelings of intimidation and she indicated that she was uncomfortable serving on the jury. (3/2/18 Tr., at 3-13, attached as Exhibit 1). After being notified of the situation, the Court inquired of the excused juror as to the circumstances that led to that belief and then excused that juror from further service. (*Id*.). Initially, the excused juror advised the Court that she had not advised her fellow jurors of her feelings; however, upon further questioning, the juror advised the Court that she had discussed the matter with her fellow jurors. (*Id*. at 8). After learning that the excused juror had relayed her feelings to the other jurors, the Court brought each juror into chambers and questioned them on the record one at a time about what had happened. (*Id.* at 26-59). During this questioning, the Court asked the questions of the jurors and allowed one lawyer for the Defendant and the government to be present in chambers as the questions were asked of the jurors. (*Id*.)

During the Court's questioning of the jurors, it was clear that the excused juror's perceived intimidation was an overreaction and, importantly, none of the other jurors shared that juror's concerns. There was never an actual threat made to the excused juror. During questioning by the Court, the excused juror confirmed that she had never actually been threatened. (Ex. 1, at 6-7, 12). The record is also clear that the other jurors believed that there was no basis for the excused juror to feel intimidated. (*Id*. at 18-19, 27, 30-31, 33-35, 36-37, 38-40, 43, 45, 47-48, 50-51, 53-54, 56, 59).

The Court's investigation of the matter revealed the following. On March 1, 2018 (Thursday), the excused juror was walking into the courthouse with other women who had been sitting behind the Defendant in the gallery at trial (and who the excused juror deduced were members of the

Defendant's family). (Ex. 1, at 26-59). The excused juror decided to take the stairs instead of riding the elevator with these women, and in the stairwell, the excused juror believed that a man with white hair followed her into the stairwell and attempted to say something to her. (*Id.*). This description matches that of the Defendant and the excused juror implied to other jurors that she believed that the man in the stairwell was the Defendant. (*Id.*) One juror believed that the excused juror stated that she believed the Defendant was the individual in the stairwell while other jurors did not recall the excused juror definitively stating that she believed it was the Defendant. (*Id.*).

The excused juror returned to the jury room startled and advised certain other jurors about what happened. (Ex. 1, at 26-59). Certain members of the jury advised the excused juror to relay her concerns to the Court's staff, but she did not do so that day. (*Id.*). Some members of the jury went out to lunch that day (Thursday) with the excused juror, and commented that she appeared better as the day progressed and even was joking about the situation later that day. (*Id.*). To make sure that the excused juror felt better, certain jurors walked out of the courthouse with the excused juror to her car on Thursday evening. (*Id.*). At that time, none of the jurors shared the excused juror's misperceived notion that she had reason to feel intimidated. (*Id.*).

The following morning, March 2, 2018 (Friday), certain jurors waited outside the courthouse for the excused juror. (Ex. 1, at 26-59; Ex. 2, at 8-61). When the excused juror approached the courthouse, the members of the jury who were waiting for her waived to her, at which point the excused juror avoided them. (*Id.*). The excused juror entered the jury room and advised others in the jury room that the individuals she had seen at the elevator the prior day were waiting for her outside the courthouse. (*Id.*). When the other jurors advised the excused juror that it was them who were waiting for her outside the courthouse, the excused juror started to cry and ran to the bathroom in the jury room. (*Id.*). The excused juror then relayed to the Court her

perceived feelings of intimidation, and in doing so, exaggerated the circumstances of what happened. (Ex. 1, at 5-6). At the end of the Court's questioning of these jurors, Judge Starrett denied the defense's motion for a mistrial concluding that there was no basis for such relief given that the jurors all confirmed that they were unbiased and were impartial. (*Id*. at 62).

During the Court's questioning of these jurors, each juror answered that (1) he or she believed that the excused juror had overreacted or was paranoid; (2) none of them felt intimidated in any manner; (3) they were not biased against the Defendant as a result of the incident; and (4) they could be fair and impartial in reaching a verdict in the case. (Ex. 1, at 26-59). Shortly after the Court finished its questioning of these jurors, the Defendant's counsel brought a Fifth Circuit case to the Court's attention, *United States v. Sylvester*, 143 F.3d 923 (5th Cir. 1999). After consultation with counsel for the Defendant and the government, the Court allowed counsel for both sides to ask questions of the jurors under oath. (3/2/2018 Tr., at 8-61 (attached as Exhibit 2)). The Court recalled each juror one at a time, and placed them under oath at which time they affirmed their prior statements in response to the Court's questioning of them. (Ex. 2, at 9, 12, 22, 26, 29, 34, 39, 43, 45, 49, 52, 55, 58). Defense counsel then asked questions of the jurors, and again, they all confirmed that they were not biased against the Defendant; they believed that the excused juror overreacted or was acting paranoid; none of them felt intimidated; and they all confirmed again that they were impartial. (Ex. 2, at 8-61). After the Defendant's counsel's questioning of the jurors, the Court again denied the motion for a mistrial. (Ex. 2, at 61). The Court then instructed the jury and both sides presented closing arguments.

The Court and defense counsel's questioning of the jurors belie the Defendant's argument that the jury was prejudiced against him as a result of the excused juror's misperceived feelings of intimidation. In any trial, the jury is presumed to be impartial and unbiased. *See United States v.*

5

*Wayman*, 510 F.2d 1020, 1024 (5th Cir. 1975). After learning of the issue with the excused juror, the Court questioned each juror on the record, placed them under oath, and allowed counsel for both sides to ask questions to determine whether any outside influence injected prejudice into the jury box. *See Remmer v. United States*, 347 U.S. 227 (1954); *Sylvester*, 143 F.3d at 932-33. The Court correctly exercised its discretion in denying the motion for a mistrial and determined following the examination of the jurors that there was no prejudice and that each juror could continue serving in an impartial manner. *See, e.g.*, *United States v. Garrett*, 237 F.3d 631, at *1-2 (5th Cir. Nov. 1, 2000) (affirming the district court's decision to deny a motion for a new trial because the defendant did not rebut the presumption of jury impartiality when presenting evidence that three jurors told fellow jurors that they had a bad experience with the insurance company where the defendant had worked).

The Defendant has failed to show that there is a substantial likelihood that a new trial will be granted based on this issue. The Defendant's Motion mischaracterizes the factual record of the questioning that took place in chambers. For instance, the Defendant's Motion discusses how the excused juror told certain other members of the jury that her car was not "bombed," (Mot., at 3), however, the Motion omits the fact that, according to the juror who heard the comment, the excused juror made this comment facetiously in attempt to poke fun at herself, and the juror who heard that comment understood it to be a joke. (Ex. 2, at 59-60). Any suggestion or insinuation that the rest of the jurors credibly believed that the Defendant or his family contemplated "murdering" a member of the jury based on this comment is false. (Mot., at 4). The Defendant also notes that the excused juror first advised other jurors of the perceived intimidation on February 27 (Tuesday) (Mot., at 2), but that argument is also belied by the record. While two jurors stated that they believed the first that they heard of the excused juror's feeling of intimidation was on

February 28 (Wednesday), and one juror thought she first heard about the issue on February 27 (Tuesday) the rest of the jurors stated that they first heard of this situation on March 1 (Thursday). (Ex. 1, at 26-59; Ex. 2, at 8-61).[1]

Contrary to the Defendant's portrayal (Mot., at 2), this issue of a perceived feeling of intimidation did not permeate the jury all week; instead, it first came to light on Thursday, March 1. The Defendant also states that certain jurors waiting for the excused juror on the morning of March 2 demonstrates that they were prejudiced against the Defendant (Mot., at 2-3); however, this argument omits that each of these jurors stated under oath that they were unbiased and impartial. (Ex. 1, at 28, 32, 34, 37, 40, 42, 45, 47, 49, 51, 54, 56, 59). Additionally, these jurors stated that they were waiting for the excused juror to alleviate any anxiety she may have been feeling—not because they believed any of her beliefs about her feeling of intimidation were credible. (Ex. 1, at 18-19, 27, 30-31, 33-35, 36-37, 38-40, 43, 45, 47-48, 50-51, 53-54, 56, 59). Indeed, they all stated under oath that they believed the excused juror overreacted and was acting paranoid. (*Id.*) Finally, the Defendant's Motion also omits how, during questioning by his counsel, one juror stated that the Defendant was a "good person." (Ex. 2, at 42).

The law also forecloses the Defendant's argument that this issue warrants a new trial. Each juror stated under oath that they were unbiased and impartial. Importantly, none of the jurors believed that any perceived feeling of intimidation expressed by the excused juror was credible after the Court carefully questioned each of the jurors separately in chambers. *See United States v. Norton*, 700 F.2d 1072, 1076 (6th Cir. 1983) (affirming denial of a motion for mistrial after a

---

[1] The excused juror also stated that she was uncomfortable because she believed that a person with a notebook followed her in the parking lot after at some point after trial during the week. (Ex. 1, at 6-7). The excused juror thought that this encounter took place on Tuesday (Ex. 1, at 9), but she never stated that she believed that the person with the notebook was affiliated with the Defendant or his family.

juror received a prank phone call, and then related the call to other jurors, where the court "carefully questioned all of the exposed jurors as to the effect of the phone call on their ability to remain impartial, [and all] of them responded that they were not intimidated, having viewed the call as a harmless prank"); *United States v. Sublet*, 644 F.2d 737, 740-41 (8th Cir. 1981) (no prejudice where juror received threatening comment from trial spectators and then communicated those comments to other jurors, where during a hearing held by the court, other jurors explained that they did not perceive the comment as a threat); *United States v. Bufalino*, 576 F.2d 446, 450-52 (2d Cir. 1978) (holding that the denial of a motion for mistrial was justified where spectators tried to start conversations with the jurors and there were suggested attempts at jury intimidation, but the jurors declared that they were unaffected); *see also United States v. Sarkisian*, 197 F.3d 966, 982 (9th Cir. 1999) (affirming the district court's denial of a motion for a mistrial because a juror's perceived threat from a prank phone call did not taint the jury and none of the jurors believed that the prank phone call actually constituted a threat); *United States v. Schiro*, 679 F.3d 521, 531-32 (7th Cir. 2012) (affirming decision denying a motion for mistrial during an organized crime trial where one of the juror's saw a defendant threaten the prosecutor during closing arguments); *United States v. Lloyd*, 661 F. App'x 605, 607-08 (11th Cir. 2016) (affirming district court's decision to deny a motion for a mistrial after one juror—who was excused—expressed fear to other jurors that the defendant could have access to the jury questionnaires where other jurors did not share that same belief); *accord United States v. Kelley*, 140 F.3d 596, 608-09 (5th Cir. 1998).

Simply put, the examination of the jurors conclusively determined that the Defendant suffered no prejudice as a result of the excused juror's comments about her misperceived feelings. Judge Starrett properly denied the Defendant's motion for a mistrial on this basis after speaking

8

with all the jurors, and there is nothing that warrants revisiting Judge Starrett's decision on this issue. *See United States v. Sammour*, 816 F.3d 1328, 1338 (11th Cir. 2016) ("When a district court finds that a juror is not biased, our 'deference . . . is at its pinnacle.'" (quoting *Skilling v. United States*, 561 U.S. 358, 396, 130 S. Ct. 2896, 177 L.Ed 2d 619 (2010)).

Furthermore, the evidence of the Defendant's guilt was overwhelming. The jurors all stated under oath that they were impartial, and could follow the Court's instructions, which they are presumed to do. *United States v. Torres*, 114 F.3d 520, 526 (5th Cir. 1997). The jury also carefully considered the evidence before returning guilty verdicts on all counts, as demonstrated by the six hours of deliberations and its question regarding the definition of "artifice," which is an element of the charged wire fraud offenses. *See United States v. Smith*, 26 F.3d 739, 760 (7th Cir. 1994) (holding in case involving possible threat to jury that, "[i]n determining whether there was a reasonable possibility of prejudice, the judge may look at an array of factors, including the nature and extent of the evidence against the defendants, admonitions and instructions given to the jury, and the mixed nature of the verdicts. The judge can also consider the length of deliberations, and any other evidence, such as the content of notes sent to the judge during deliberations, including a genuine effort by the jurors to decide the based on the law and the facts" (internal citation omitted)). The jury carefully considered the evidence of the Defendant's guilt for over six hours, and nothing about the excused juror's misperceived feeling of intimidation had any effect on its decision to return guilty verdicts. The Defendant has failed to show that there is a substantial likelihood that a motion for a new trial will be granted on this issue, and his Motion should therefore be denied.

II.     **The Defendant Failed To Demonstrate By Clear And Convincing Evidence That He Is Not A Flight Risk And That He Is Not A Danger To The Community.**

The Defendant has also failed to demonstrate that he is not a flight risk and is not a danger

to the community.  Given the potential prison sentence that the Defendant is facing, he has an incentive to flee to flee this country.  Indeed, a preliminary calculation of the sentencing guidelines places the Defendant at an advisory guidelines range of 97 to 121 months' imprisonment.  The Defendant also has the financial means to flee and support himself living abroad.  The Defendant has international contacts.  He attended medical school in Mexico and has traveled there several times within the past five years.  The Defendant has ties to Cuba: he has family there and has travelled there within the past two years.  There is no guarantee that the Cuban government would cooperate with locating and sending the Defendant back to the United States if he were to flee there.  The Defendant also is a licensed pilot and owns an airplane (#N3524W).

Moreover, while the Defendant states in his Motion that he has been compliant with his bond conditions, he exhibited a disrespect for the law during his trial.  The Defendant not only denied his guilt, but specifically denied the elements of the offense, which, in returning its verdict, the jury necessarily rejected.  To be clear, the Defendant had a right to testify in his defense, but his decision to lie and minimize his criminal conduct are factors that the Court should consider when denying the present Motion.  *See, e.g.*, *United States v. Lopez*, 504 F. App'x 297, 298 (5th Cir. 2012) (affirming denial of release on bail pending sentencing where defendants had remained free on bond prior to trial and had produced additional evidence that there were unlikely to flee).

Furthermore, the Defendant argues that he needs to tend to his medical practice and assist his staff in finding new jobs. (Mot., at 4-5).  While the State Medical Board has not yet revoked the Defendant's license, this trial clearly demonstrated that the Defendant should no longer practice medicine.  That the Defendant intends to return to his medical practice and treat patients is of great concern to the government. The Defendant was convicted of prescribing compounded medications, including those that included Ketamine, to beneficiaries whom he had never

examined, and then created false patient records to cover-up his illegal conduct. Additionally, the Defendant has known about the government's investigation for over a year, and could have taken measures to help his employees find alternative employment. In light of the fact that the Defendant knew that this criminal case would affect his ability to continue practicing medicine, he should have taken measures prior to being convicted to plan for the winding up of his medical practice. His failure to do so until being convicted of these crimes is not a reason to grant him bail pending sentencing. In sum, the Defendant has failed to establish by clear and convincing evidence that he is not a flight risk and that he is not a risk to the community. The Defendant's Motion should therefore be denied.

## CONCLUSION

WHEREFORE, for the reasons stated herein, the government respectfully requests that the Court deny the Defendant's Motion for Bail Pending Sentencing.

Dated: March 9, 2018

Respectfully submitted,

D. MICHAEL HURST, JR.
UNITED STATES ATTORNEY

By:  s/ Jared L. Hasten

Mary Helen Wall (MS Bar #100857)
Assistant United States Attorney
501 E. Court Street, Suite 4.430
Jackson, Mississippi 39201-0101
Telephone: (601) 965-4480
Fax: (601) 965-4409
mary.helen.wall@usdoj.gov

Katherine E. Payerle (NC Bar #36897)
Jared L. Hasten (IL Bar #6296695)
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., N.W.
Washington, D.C. 20005
Telephone: (202) 816-9269

katherine.payerle@usdoj.gov
jared.hasten@usdoj.gov

## CERTIFICATE OF SERVICE

I, Jared L. Hasten, hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties of interest.

On this, the 9th day of March, 2018.

s/ Jared L. Hasten<br>
Jared L. Hasten<br>
Trial Attorney