IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**UNITED STATES OF AMERICA**

v.     CRIMINAL NO. 2:17-CR-31-KS-JCG

**ALBERT DIAZ**

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **denies** Defendant's Motion for Bond Pending Appeal [138].

### I. BACKGROUND

The Court provided the background of this case in its opinion of June 5, 2018. *See United States v. Diaz*, No. 2:17-CR-31-KS-JCG, 2018 U.S. Dist. LEXIS 94230, at *1-*3 (S.D. Miss. June 5, 2018). A jury found Defendant guilty on sixteen counts related to a conspiracy to defraud a federal health care benefit program. On July 6, 2018, Defendant filed a Motion for Bond Pending Appeal [138], which the Court now addresses.

### II. DISCUSSION

"A convicted defendant has no constitutional right to bail." *United States v. Olis*, 450 F.3d 583, 585 (5th Cir. 2006). In fact, any right to bail pending appeal "derives from 18 U.S.C. § 3143, which 'establishes a presumption against' its being granted." *Id.* (quoting *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987)). In this case, the statute provides two different burdens that Defendant must meet.

## A. Section 3143(b)(1)

First, with regard to his convictions for conspiracy to commit health care fraud and wire fraud (Count 1), wire fraud (Counts 2-5), conspiracy to obstruct justice (Count 11), and obstruction of justice (Counts 12-16), the statute provides, in relevant part:

> Except as provided in paragraph (2), the judicial office shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
>
> > (i) reversal,
> >
> > (ii) an order for a new trial,
> >
> > (iii) a sentence that does not include a term of imprisonment, or
> >
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstances described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

18 U.S.C. § 3143(b)(1).

Therefore, to obtain bond pending appeal, a convicted defendant must demonstrate:

(1) that he is not likely to flee or pose a danger to the safety of others; (2)

that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that the substantial question, if decided favorably to the defendant, is likely to result in reversal, in an order for a new trial, in a sentence without imprisonment, or in a sentence with reduced imprisonment.

*United States v. Clark*, 917 F.2d 177, 179 (5th Cir. 1990). A "substantial question" is "one that is 'close' or 'that could very well be decided the other way' by the appellate court." *Id.* at 180 (quoting *United States v. Valera-Elizondo*, 761 F.2d 1020, 1024 (5th Cir. 1985)). In this context, "likely" to result in reversal means "more probable than not" to result in reversal. *Valera-Elizondo*, 761 F.2d at 1025.

1. *Likelihood to Flee/Danger to Others*

Defendant poses no danger to the safety of others. He has no criminal history. His crimes did not involve violence. The record contains no evidence whatsoever that he might harm others if released on bond.

However, the Court believes that Defendant is a flight risk. Defendant is seventy-eight years old. His attorney argued at sentencing that imprisonment would likely be a death sentence. Transcript of Sentencing Proceedings at 76, *United States v. Diaz*, No. 2:17-CR-31-KS-JCG (S.D. Miss. June 14, 2018), ECF No. 122. In allocution, Defendant implied that imprisonment would be a death sentence. *Id.* at 80-81. Defendant asserted that he had lost his medical license, reputation, and the respect of his community. *Id.* at 80. He said: "The destruction of my life was 90 percent complete." *Id.* But then his wife filed for divorce shortly before sentencing, "complet[ing] everything." *Id.* Likewise, Defendant's attorney argued that he had "lost

3

everything." *Id.* at 76. In summary, Defendant has nothing to lose by attempting to flee.

Additionally, Defendant has not taken responsibility for his actions. A jury of his peers found him guilty on all sixteen counts of the indictment, but he denies that he did anything wrong. The Government presented recordings of Defendant plotting with a co-conspirator. Still, Defendant denies that he did anything wrong. Defendant directly testified that he falsified patient records in an attempt to cover up that he had prescribed phony medications for patients he never examined. But he denies that he did anything wrong. Prior to sentencing, neither Defendant nor his counsel provided the probation officer with sufficient information for the Court to determine Defendant's restitution. In fact, according to the probation officer, Defendant claimed ignorance when asked basic questions such as whether he had any bank accounts. In the Court's opinion, this is merely the latest manifestation of Defendant's pattern of subtle defiance throughout these proceedings.

Finally, the Court notes that Defendant admitted that he has "a half-ownership in a small single-engine airplane." Transcript of Bond Hearing at 17, *United States v. Diaz*, No. 2:17-CR-31-KS-JCG (S.D. Miss. Mar. 15, 2018), ECF No. 90. He also admitted that he has tenuous connections to foreign countries insofar as he has "distant family" in Cuba, and attended medical school in Mexico. *Id.* These are minor factors, at best, given the tenuousness of the connections.

For all these reasons, the Court finds that Defendant has not demonstrated by clear and convincing evidence that he is unlikely to flee if released on bond pending

appeal.

### 2. *Purpose of Delay*

The Government did not address this factor in its response. Therefore, the Court will assume that Defendant's appeal is not for the purpose of delay.

### 3. *Sufficiency of the Evidence*

The first "substantial question" that Defendant raises is whether the evidence was sufficient to support various aspects of the convicted offenses. "A claim that the evidence is insufficient to support a conviction is reviewed in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the jury." *United States v. Wise*, 221 F.3d 140, 147 (5th Cir. 2000). The Court "must uphold the conviction if a rational jury could have found that the government proved the essential elements of the crime charged beyond a reasonable doubt." *Id.* "[T]his review is highly deferential to the verdict," and "a defendant seeking reversal on the basis of insufficient evidence swims upstream." *United States v. Chapman*, 851 F.3d 363, 376 (5th Cir. 2017).

Rather than argue that specific elements of each convicted offense were not supported by the evidence, Defendant provided a lengthy narrative of purported shortcomings in the evidence. The Court declines to guess which elements of the convicted offenses Defendant challenges. But the Court will address the factual contentions it was able to glean from Defendant's rambling argument.

First, Defendant argues that the evidence demonstrated that he did not issue the prescriptions. The Court addresses this issue below, and it also addressed it in a

prior order. *Diaz*, 2018 U.S. Dist. LEXIS 94230 at *38. The Court adopts its previous conclusions and findings. There was ample evidence presented at trial from which a jury could conclude that Defendant issued the prescriptions.

Next, Defendant argues that there was no evidence that he intended to enrich himself or others. As the Court explains below, Defendant's personal profit is not an element of the convicted offenses, and there was evidence that he knew others were profiting from the fraudulent prescriptions. The Government was only required to show that Defendant had a "conscious intent to defraud," *United States v. Brown*, 459 F.3d 509, 519 (5th Cir. 2006), not an intent to enrich himself or others. This intent can be inferred from circumstantial evidence. *United States v. Willett*, 751 F.3d 335, 339 (5th Cir. 2014). For the reasons provided below and in the Court's prior order, the Court finds that there was sufficient evidence to support the jury's implicit finding that Defendant had the requisite intent for the convicted offenses.

Defendant argues that there was no evidence that he knew the claims were submitted to a health care benefit program. The Court addresses this issue below. There was evidence to support the jury's finding that Defendant knew the claims were being submitted to TRICARE.

Finally, Defendant argues that there was no evidence that he intended to obstruct the grand jury investigation or TRICARE audit. The Court thoroughly addressed the obstruction conviction in its prior opinion, and it adopts its previous conclusions and findings. *Diaz*, 2018 U.S. Dist. LEXIS 94230 at *35-*38.

For all these reasons, the Court finds that Defendant has not established that

there is a "substantial question" with regard to the sufficiency of the evidence.

    *4.*    *Constructive Amendment of the Indictment*

Next, Defendant argues that the Government constructively amended the indictment because 1) it failed to present any evidence that he made money from the conspiracy, 2) it failed to present any evidence that he knew that others illegally profited, 3) it failed to present evidence that he issued the prescriptions at issue, and 4) it failed to present evidence that he knew the claims were submitted to a health care benefit program. Defendant did not specify the counts which he contends were constructively amended.

"[A]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *United States v. Griffin*, 800 F.3d 198, 202 (5th Cir. 2015). "[A] constructive amendment occurs when the court 'permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged' or upon 'a materially different theory or set of facts than that which the defendant was charged.'" *United States v. Nanda*, 867 F.3d 522, 529 (5th Cir. 2017) (quoting *United States v. Chaker*, 820 F.3d 204, 210 (5th Cir. 2016)). "But if 'the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.'" *Griffin*, 800 F.3d 198, 202 (5th Cir. 2015) (quoting *United States v. Miller*, 471 U.S. 130, 136, 105 S. Ct. 1181, 85 L. Ed. 2d 99 (1985)). "[T]he key

7

inquiry is whether the jury charge *broadened* the indictment; if it only *narrowed* the indictment, no constructive amendment occurred." *Id.* (citing *United States v. Nunez*, 180 F.3d 227, 232-33 (5th Cir. 1999)).

First, Defendant argues that the Government constructively amended the indictment because it failed to present any evidence that he made money from the conspiracy. But Defendant's personal financial profit is not an element of the convicted offenses. Moreover, the Government did not allege in the indictment that Defendant intended to personally profit. Therefore, it could argue and present evidence at trial that Defendant was motivated by a desire to help his acquaintance, Jay Schaar, without broadening the factual basis of the indictment.

Next, Defendant argues that the Government failed to present any evidence that he knew that others illegally profited. This is not true. Defendant himself testified that he knew Schaar, a pharmaceutical marketer, would profit from the prescriptions he signed. Moreover, during a taped conversation with Schaar, Defendant commented on the amount that his co-conspirators had stolen. He said, "Why did they try to screw everybody? Especially the government. How much were they charging?" Finally, Defendant was a practicing physician with over forty years of experience. Based on the totality of the evidence, it would be reasonable for the jury to infer that he knew that the marketers and producers of the drugs he was prescribing would profit from their sale. Therefore, the Government did, in fact, present evidence that Defendant knew his co-conspirators were profiting illegally.

Defendant also argues that the Government failed to present any evidence that

8

Defendant issued the prescriptions at issue. The Court addressed this issue in a prior opinion and adopts its previous findings and conclusions. *Diaz*, 2018 U.S. Dist. LEXIS 94230 at *38. Defendant admitted in the taped recordings with Schaar that he issued the prescriptions. At trial, he admitted to falsifying patient records to cover up the fraud. In his response to the TRICARE audit, Defendant never denied that he had issued the prescriptions. Original copies of some of the prescriptions were found in his office. In short, there was ample evidence that Defendant issued the prescriptions.

Finally, Defendant argues that the Government failed to present evidence that he knew the claims were presented to a health care benefit program, such as TRICARE. But Schaar testified that Defendant commented on the fact that the patients were TRICARE beneficiaries, and the prescriptions themselves had TRICARE listed as the patient's insurer.

For all these reasons, the Court concludes that Defendant has not demonstrated that he was convicted on a different theory or factual basis from that listed in the indictment. Therefore, the indictment was not constructively amended.

### 5. *Implied Bias*

Next, Defendant argues that there is a substantial question as to whether the Court erred by declining to impute bias to the jury and grant a mistrial on the basis of the events related to Juror 1 on the final day of trial. The Court thoroughly addressed this issue in a previous opinion and adopts its previous findings and conclusions. *Id.* *4-*22.

### 6. *The Schaar Recordings*

Defendant also argues that the Government intruded upon his attorney-client relationship by having Jay Schaar surreptitiously record conversations with him after he had retained counsel. The Court thoroughly addressed this issue in a previous opinion and adopts its previous findings and conclusions. *Id.* at *23-*29.

7. *Continuance*

Defendant argues that the Court erred in denying his request for a continuance to investigate evidence impeaching a Government witness that was disclosed on the eve of trial. "District courts have broad discretion whether to grant continuances . . . ." *United States v. Stanford*, 805 F.3d 557, 567 (5th Cir. 2015). When reviewing the denial of a motion for continuance, the Court considers

> . . . the "totality of the circumstances," including (a) the amount of time available; (b) the defendant's role in shortening the time needed; (c) the likelihood of prejudice from denial; (d) the availability of discovery from the prosecution; (e) the complexity of the case; (f) the adequacy of the defense actually provided at trial; and (g) the experience of the attorney with the accused.

*United States v. Walters*, 351 F.3d 159, 170 (5th Cir. 2003). Defendant argues that the Court should have granted him a continuance to investigate Jay Schaar's prior treatment for bipolar disorder and prescription drug addiction, which he contends the Government first disclosed to him four days before trial.

First, Defendant sought and received two continuances. *See* Order, *United States v. Diaz*, No. 2:17-CR-31-KS-JCG (S.D. Miss. Nov. 22, 2017), ECF No. 21; Text Order, *United States v. Diaz*, No. 2:17-CR-31-KS-JCG (S.D. Miss. Jan. 18, 2018). Therefore, Defendant had ample time to investigate the evidence and form a trial strategy.

More importantly, Defendant was not prejudiced in the slightest by the Court's denial of the motion to continue. On February 22, 2018 – four days before trial – the Government disclosed to Defendant's counsel that Schaar had received mental health treatment for bipolar disorder and had been in rehabilitation for misuse of prescription drugs. However, the *same information* had already been provided to Defendant's counsel on January 26, 2018, in Schaar's interview reports – 31 days before trial. Moreover, Schaar discussed his prior mental health treatment in a public change-of-plea hearing before this Court in July 2017. Therefore, Defendant either already knew or should have known about Schaar's mental health and prescription drug issues well in advance of trial.

Even if the Government first disclosed the information four days before trial, Defendant was still not prejudiced. If the Government makes a late disclosure of *Brady* or *Giglio* materials, "the inquiry is whether the defendant was prejudiced by the tardy disclosure." *United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir. 1985). "If the defendant received the material in time to put it to effective use at trial," he was not prejudiced. *Id.* Defendant cross-examined Schaar on these issues and argued to the jury that Schaar had no credibility because of them. The Court even gave Defendant's requested jury instruction regarding a witness's drug use and the reliability of their testimony. Accordingly, Defendant was not prejudiced by the denial of a continuance. *See United States v. O'Keefe*, 128 F.3d 885, 899 (5th Cir. 1997) (disclosure of 302's during trial did not prejudice defendant); *McKinney*, 758 F.2d at 1050 (no prejudice

where impeachment evidence was disclosed five days before witness's testimony); *United States v. Mitchell*, 538 F. App'x 369, 370-71 (5th Cir. 2013) (disclosure five days before trial was not prejudicial).

    8.    *Jury Instructions*

Defendant argues that the Court's instructions on deliberate ignorance and aiding and abetting were confusing and not supported by the evidence. The Court thoroughly addressed this issue in a previous opinion and adopts its previous findings and conclusions. *Diaz*, 2018 U.S. Dist. LEXIS 94230 at *38-*41.

For all these reasons, the Court finds that Defendant has not demonstrated that he meets the conditions for release pursuant to 18 U.S.C. § 3143(b)(1). He has not shown that he is unlikely to flee if released, or that there is a substantial question likely to result in reversal on appeal. *See Clark*, 917 F.2d at 179-80.

## B.    *Section 3143(b)(2)*

As for the convictions for conspiracy to distribute a controlled substance (Count 6) and distribution of a controlled substance (Counts 7-10), the statute provides, in relevant part:

> (2)    The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari be detained.

18 U.S.C. § 3143(b)(2). Section 3142(f)(1)(C) describes "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act . . . ." 18 U.S.C. § 3142(f)(1)(C). But "[a] person subject to detention pursuant to

section 3143(a)(2) or (b)(2) and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1) may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). In summary, one convicted of an offense prescribed by the Controlled Substances Act that carries a maximum term of imprisonment of at least ten years must be detained pending appeal. 18 U.S.C. §§ 3142(f)(1)(C), 3143(b)(2). But Section 3145(c) provides "an avenue for exceptional discretionary relief from those provisions." *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991).

It is undisputed that Defendant was convicted of an offense prescribed by the Controlled Substances Act that carries a maximum term of at least ten years. Therefore, Section 3143(b)(2) applies unless Defendant meets the conditions of release described in Section 3142(b)(1) and clearly shows exceptional circumstances why his detention would not be appropriate. For the same reasons provided above, the Court finds that Defendant has not demonstrated that he meets the conditions for release set forth in 18 U.S.C. § 3143(b)(1).

Moreover, Defendant has not clearly shown that there are exceptional reasons why his detention would be inappropriate. "Examples of such circumstances include the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and any unusual delay in the process of the appeal." *United States v. Lacy*, 643 F.2d 284, 285 (5th Cir. 1981). As explained above, Defendant does not have a high probability of success on appeal.

Also, hypertension and tremors are not serious health conditions, and the conditions of Defendant's incarceration are likely more amenable now that he is in a federal prison facility, rather than in a county jail awaiting sentencing. Finally, there has been no unusual delay in the appeal process. For all these reasons, the Court concludes that Defendant does not meet the conditions for release set forth in 18 U.S.C. § 3143(b)(2).

### III. CONCLUSION

For these reasons, the Court **denies** Defendant's Motion for Bond Pending Appeal [138].

SO ORDERED AND ADJUDGED this 24th day of August, 2018.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE